UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO: 00-6148-CR-DIMITROULEAS**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICHAEL THOMAS,

    Defendant.

_____/

NIGHT ~~~
~~~
AUG 1 4 2000

CLERK, USDC / SDFL / FTL

### MOTION TO QUASH SEARCH WARRANT;
### MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE
### AND INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, Michael Thomas, by and through his undersigned counsel,

pursuant to the First, Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution, and Article I, Sections 9, 16, and 23 of the Florida Constitution, and respectfully

requests this Honorable Court enter an Order quashing the search warrant heretofore issued,

further suppressing as evidence all items seized from the premises located at 1507 Coolidge

Street, Hollywood, Florida on May 10, 2000, and as grounds and in support thereof states as

follows:

1.     On May 10, 2000, members of law enforcement executed a Federal search warrant at

    1507 Coolidge Street, Hollywood, Florida. A copy of the search warrant is attached

    hereto as Exhibit A and incorporated herein by reference.

2.     The search warrant was based upon an Application and Affidavit by Agent Kris Hunt, of

    the United States Drug Enforcement Administration (hereinafter referred to as "DEA").

    A copy of the Application and Affidavit are attached hereto as Exhibit B and incorporated

herein by reference.

3.  The evidence sought to be suppressed includes any and all evidence seized pursuant to the aforementioned search warrant, specifically, the items set forth on the Report of Drug Property Collected, Purchased, or Seized (DEA form number 7), a copy of which is attached hereto as Exhibit C. More specifically, Defendant, Michael Thomas seeks suppression of alleged marijuana plants, alleged root clusters, a green leafy substance alleged to be marijuana, and tablets seized which are alleged to contain alprazolam[1].

4.  The aforementioned evidence was illegally seized in that:

a)  the search and seizure was unlawful;

b)  the affidavit in support of the search warrant contained stale information;

c)  the affidavit in support of the search warrant lacked sufficient detail regarding the alleged reported activity;

d)  the affidavit lacked sufficient detail concerning the time period in which alleged marijuana plants were said to have been seen growing in a bathroom by "a confidential source of information;"

e)  the use of a thermal imaging device by law enforcement constituted a warrantless search;

f)  the thermal imaging evidence was false, incomplete and misleading;

g)  the electric consumption records were false, incomplete and misleading;

---

[1]The Defendant has not been charged with possession of the alleged controlled substance. Further, the Government has not provided notice that the same shall be utilized as potential Rule 404(b), F.R.E., evidence at trial. The Defendant suggests that the evidence would be inadmissable even if properly noticed pursuant to the Federal Rules of Evidence, the Standing Discovery Order entered by this Court, and the Local Rules for the Southern District of Florida.

2

h)   the thermal imaging evidence violated Michael Thomas' rights to privacy and to be

free from unreasonable searches and seizures;

i)   the thermal imaging evidence should not have been considered pursuant to

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 113 S.Ct. 2786 (1993);

j)   the odor of marijuana allegedly detected by law enforcement officials while

conducting a thermal imaging search was the product of an unlawful, warrantless

search;

k)   the alleged odor of "growing marijuana" as opposing to "burning marijuana" as set

forth in the Affidavit is false and misleading;

l)   law enforcement could not lawfully detect any cognizable odor of "growing

marijuana";

m)   assuming arguendo any law enforcement officer could credibly opine that the odor

of "growing marijuana" was detected, such search and detection had to have

occurred while law enforcement conducted an unlawful, warrantless search of the

subject premises;

n)   the affidavit in support of search warrant was insufficient to support the warrant in

this case because the magistrate judge did not have a sufficient basis to conclude

that evidence illegal activity would be found at the residence;

o)   the magistrate judge did not have substantial basis to conclude that wrongdoing

would be uncovered by a search;

p)   the Federal search warrant was over broad in that it lacked particularity as to the

items to be seized; and

3

q) the items to be seized pursuant to the search warrant were not described with particularity so as to prevent "the seizure of one thing under a warrant describing another." Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed.2d 231 (1927); see also Andresen v. Maryland, 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); United States v. Blair, _ F.3d _ (6th Cir. 2000)[2000 WL680208, *3].

5. Law enforcement exceeded the scope of the search warrant in seizing one (1) or more items outside those authorized to be seized pursuant to attachment B to the warrant.

6. Law enforcement officers seized one (1) or more items which were neither in plain view nor within the scope of the warrant. Further, the officers did not have probable cause to believe that there was a nexus between the alprazolam pills and criminal activity.

7. No good faith exception to the search warrant requirement exists at bar, as good faith is inapplicable to salvage the search of the premises.

8. The affidavit at bar did not set forth facts sufficient to create a "fair probability" that evidence of a crime would be found in the place to be searched. See United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999), cert. denied 120 S.Ct. 1442 (2000); United States v. Grimaldo, _ F.3d _ (8th Cir. 2000)[2000 WL709498].

9. In this case, the confidential informant's information did not rise to the level of probable cause. Clearly, an anonymous tip, without more, does not constitute probable cause. See United States v. Wright, _ F.3d _ (9th Cir. 2000)[2000 WL776633, *3); United States v. Mendonsa, 989 F.2d 366, 368 (9th Cir. 1993), citing Illinois v. Gates, 462 U.S. 213, 227, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

10. Under Gates, looking at the totality of the circumstances, there was not a fair probability

4

that contraband or evidence of a crime would be found on May 10 on Coolidge Street in Hollywood, Florida.

11.  Law enforcement officers failed to "knock and announce" in contravention of Title 18, U.S.C. Section 3109.

12.  The defense position is that the confidential informant's information was false. While it is true that there were marijuana plants found growing in the residence when the search warrant was executed, the defendant denies that the informant was ever inside the house or ever in a position to see growing marijuana. Accordingly, a materially false statement is contained in the search warrant, i.e. that the informant saw marijuana growing.

13.  Further, the assertion in the Affidavit that thermal imaging established probable cause for the search warrant is false and incorrect. First and foremost, thermal imaging is not a scientifically reliable "test". Secondly, the thermal image results and Florida Power & Light records for the subject residence did not establish probable cause to believe that marijuana was growing.

14.  Michael Thomas acknowledges the law in the Eleventh Circuit that thermal imaging is not a search with the meaning of the Fourth Amendment. See United States v. Robinson, 62 F.3d 1325 (11th Cir. 1995); United States v. Foree, 43 F.3d 1572 (11th Cir. 1995). Nevertheless, as set forth in United States v. Mendez, 117 F.3d 1429 (10th Cir. 1997) "there has been no change in circuit law regarding thermal imagers, significant or otherwise. To be sure, there is some difference of opinion on the warrantless use of thermal imagers, ..."

15.  The Defendant asserts that the warrantless thermal imaging scanning in this case infringed upon Michael Thomas' rights to privacy, and while not specifically a "search" within the

meaning of the Fourth Amendment, was one of the circumstances which, when viewed in their totality, established a constitutional violation. Further, the Defendant questions where law enforcement was when conducting the thermal imaging scan. If, as the Defendant presumes, law enforcement was on the residence, such conduct is violative of the United States Constitution.

16. In this case, Michael Thomas need not show actual intrusion or invasion into a "protected space" as "the Fourth Amendment protects people - - and not simply 'areas' - - against unreasonable searches and seizures." Katz v. United States, 49 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed2d 576 (1967). In this case, the two part test formulated to determine whether a Fourth Amendment violation has occurred as a result of a Government intrusion into an individual's privacy is utilized. See Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed2d 220 (1979) [adopting Katz' reasoning]. See also, United States v. Kyllo, 190 F.3d 1041 (9th Cir. 1999) [en banc].

17. In this case, Michael Thomas has made a showing of a subjective expectation of privacy. This expectation is one that society recognizes as objectively reasonable.

18. Further, while law enforcement utilizes the alleged "smell" of growing marijuana as a basis for the search warrant, law enforcement did not specify in the Affidavit where the agents were at the time they allegedly detected this odor. If, as the Defendant suspects, law enforcement was on the property of the residence, a constitutional violation occurred and the alleged smell cannot be utilized as a factor to establish probable cause.

19. As eloquently set forth by the Sixth Circuit in United States v. Dice, 200 F.3d 978, 987 (6th Cir. 2000):

> The excessive zeal displayed by the enforcement officers cannot be

6

> countenanced even in the interest of battling our nation's drug
> woes. As Lord Atkins declared to his fellow countrymen in World
> War II, 'in England, amidst the clash of arms, the laws are not
> silent.' Nor is our constitution during our nation's 'war on drugs.'
> We therefore AFFIRM the district court's suppression order.

<p style="text-align:center">Id.</p>

20. Defendant, Michael Thomas respectfully requests an evidentiary hearing be conducted on

this matter. Additionally, a Franks hearing is required to determine the truthfulness of

allegations contained in the search warrant affidavit.

WHEREFORE, based upon the foregoing grounds and authority, the Defendant, Michael

Thomas, respectfully requests this Honorable Court enter an Order quashing the search warrant

heretofore issued, further ordering suppression of the evidence specified herein.


I HEREBY CERTIFY that the original was mailed this **14th day of AUGUST, 2000** to

Assistant United States Attorney, Jeffrey Kaplan, Office of the United States Attorney, 500 East

Broward Boulevard Fort Lauderdale, Florida 33301.

Respectfully Submitted,

LAW OFFICES OF RICHARD L. ROSENBAUM
ATTORNEY FOR DEFENDANT
One East Broward Boulevard
Suite 1500, South Trust Plaza
Fort Lauderdale, Florida 33301
Telephone (954) 522-7000
Facsimile (954) 522-7003
Florida Bar No: 394688

BY _____
RICHARD L. ROSENBAUM

# United States District Court

SOUTHERN DISTRICT OF     FLORIDA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

residence located at 1507 Coolidge Street
Hollywood, Florida
further described in Attachment A

## APPLICATION AND AFFIDAVIT
## SEARCH WARRANT

CASE NUMBER    00- 4686-BSS

I \_\_\_\_\_ Kris Hunt \_\_\_\_\_ being duly sworn depose and say:

I am a(n) Special Agent with the Drug Enforcement Administration \_\_\_\_\_ and have reason to believe
           Official Title

at ☐ on the person of or ☒ on the premises known as (name, description and/or location)

residence located at 1507 Coolidge Street, Hollywood, Florida as further described in Attachment A

the \_\_\_\_\_ SOUTHERN \_\_\_\_\_ District of \_\_\_\_\_ FLORIDA \_\_\_\_\_.
ere is now concealed a certain person or property, namely (describe the person or property)

see Attachment "B"

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

idence of a commission of a crime, contraband, fruits of a crime or property used or intended for use as the means of committing the crime

in violation of Title 21 \_\_\_\_\_ United States Code, Section(s) \_\_\_\_\_ 841(a)(1) \_\_\_\_\_
The facts to support the issuance of a Search Warrant are as follows.

SEE AFFIDAVIT

ontinued on the attached and made a part hereof.   ☒ Yes ☐ No

Signature of Affiant
KRIS HUNT, SPECIAL AGENT
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION

worn to before me, and subscribed in my presence

May 10, 2000           at    Fort Lauderdale, Florida
ate                            City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE
ame and Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

## RESIDENCE TO BE SEARCHED

The residence and curtilage to be searched is a single-family residence. The residence is white in color with black colored trim, the numbers 1507 in black numerals appear to the right of the front door of the residence located at 1507 Coolidge Street, Hollywood, Florida. The residence is the 2nd house east of 15th Avenue North on the north side of Coolidge Street.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Irrigation equipment, fertilizer, marijuana, marijuana plants, marijuana seeds, materials utilized in packaging and weighing marijuana, books, records and receipts relating to the use occupancy and control of the premises, books records and receipts relating to the cultivation and/or sale of marijuana.

-er-06148-WPD    Document 25    Entered on FLSD Docket 08/15/2000    Pa

# United States District Court

_____ SOUTHERN __ DISTRICT OF ___    FLORIDA _____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

=sidence located at 1507 Coolidge Street
ollywood, Florida
further described in Attachment A

### APPLICATION AND AFFIDAVIT
## SEARCH WARRANT

CASE NUMBER    **QO- 4686-BSS**

I _____ Kris Hunt _____ being duly sworn depose and say

I am a(n) Special Agent with the Drug Enforcement Administration _____ _____ and have reason to believe
                              Official Title

at ☐ on the person of or ☒ on the premises known as (name, description and/or location)

=sidence located at 1507 Coolidge Street, Hollywood, Florida as further described in Attachment A

the _____ SOUTHERN _____ District of _____ FLORIDA _____
=re is now concealed a certain person or property, namely (describe the person or property)

=e Attachment "B"

=ich is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

idence of a commission of a crime, contraband, fruits of a crime or property used or intended for use as the means of committing the crime.

violation of Title  21 _____ United States Code, Section(s) ___ 841(a)(1) _____
=e facts to support the issuance of a Search Warrant are as follows.

### SEE AFFIDAVIT

=ntinued on the attached and made a part hereof.   ☒ Yes ☐ No

Signature of Affiant
KRIS HUNT, SPECIAL AGENT
UNITED STATES DRUG ENFORCEMENT ADMINISTRATION

=worn to before me, and subscribed in my presence

May 10, 2000
=te

ARRY S. SELTZER
=NITED STATES MAGISTRATE JUDGE
=me and Title of Judicial Officer

at    Fort Lauderdale, Florida
      City and State

Signature of Judicial Officer

36 B"

## ATTACHMENT A

### RESIDENCE TO BE SEARCHED

The residence and curtilage to be searched is a single-family residence   The residence is white in

color with black colored trim, the numbers 1507 in black numerals appear to the right of the front

door of the residence located at 1507 Coolidge Street, Hollywood, Florida.  The residence is the 2nd

house east of 15th Avenue North on the north side of Coolidge Street

## ATTACHMENT B

### ITEMS TO BE SEIZED

Irrigation equipment, fertilizer, marijuana, marijuana plants, marijuana seeds, materials utilized in packaging and weighing marijuana, books, records and receipts relating to the use occupancy and control of the premises; books records and receipts relating to the cultivation and/or sale of marijuana.

## AFFIDAVIT

I, Kris Hunt, Special Agent, United States Drug Enforcement Administration, being duly sworn, depose and state:

1.    I am a Special Agent of the United States Drug Enforcement Administration (hereinafter referred to as DEA) and have been employed as a Special Agent with the D.E.A. for the past 12 years. I have been trained as a Federal Narcotics Officer at the F.B.I. Academy, Quantico Virginia and have been previously recognized as an expert witness in Federal Court as to the illegal cultivation of Marijuana. I have attended several cannabis investigation schools for both indoor and outdoor cultivation and have participated in numerous narcotics investigations including functioning as the case agent in excess of 40 cannabis investigations. I have been certified in the use of thermal imaging devices, which detect the waste heat on the surface of objects. The facts in this affidavit are based upon my own personal knowledge as well as information related to me by other law enforcement officers and civilian personal involved in the investigation.

2.    Based upon my training, experience and participation in this and other drug trafficking investigations, including those involving marijuana (cannabis), and based upon my conversations with other experienced narcotic agents with whom I am associated, I know:

a.    That indoor cannabis cultivation requires large amounts of electricity to power the high intensity discharge (HID) lights

37

necessary to grow cannabis indoors, air conditioners and vent
fans to remove the large amount of heat generated by the HID
lights and propane carbon dioxide generators, pumps and timers to
water the plants.

    b.    That indoor cannabis cultivators utilize the following
methods, among others, in their attempts to avoid law enforcement
detection:

    (1)  Blackened out or covered windows, doors or other
visibly detectable areas to avoid outsiders from identifying
any portion o. the grow operation; and

    (2)  Fixed, moveable, or other type venting systems, usually
located away from detection or upon high areas of buildings
to vent heat and odors escaping the cultivation structure.

    c. That traffickers very often place assets in names other
than their own to avoid detection, seizure, and forfeiture of
these assets by government agencies.

    d.    That even though these assets are in other persons'
names, drug traffickers continue to use these assets and exercise
dominion and control over them.

    e.    That drug traffickers maintain books, records,
receipts, notes, ledgers, airline tickets, money orders,
cashier's checks, correspondence, and other documents and items
related to the manufacture, transportation, ordering, possession,
sale, and distribution of drugs.  These documents and items are
often maintained at the suspect's residence.

<div align="center">2</div>

    f.    That it is common for drug dealers to hide contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences for ready access and to conceal them from law enforcement authorities.

    g.    That drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their current and past associates in the drug trafficking organization.  In connection with other drug trafficking investigations, I have participated in the execution of in excess of 70 search warrants at the residences and/or business locations of drug traffickers and have frequently found notes, books, ledgers and computer files reflecting the names, addresses and other personal identifying information of drug associates.

    h.    That drug traffickers take or cause to be taken photographs or video movies of themselves, their coconspirators, and their property and assets purchased with drug proceeds which are normally kept by drug traffickers in their possession and/or at their residence. ....  .. .... .... ... . ... .      . .. .. ....

    i.    That drug traffickers usually keep paraphernalia at their residences for packing, diluting, weighing, manufacturing and distributing their drugs.

    j.    That persons involved in drug trafficking often conceal in their residences quantities of drugs, large amounts of currency, financial instruments, precious metals, jewelry, and .

other items of value which are the proceeds of drug transactions and evidence of financial transactions, relating to obtaining, transferring, hiding, or spending of large sums of money made from drug trafficking activities.

    k.    That drug traffickers utilize dogs, fences and alarm systems in order to protect their drug trafficking activities.

    2.    That the normal cultivation cycle for growing marijuana indoors is between three (3) and four (4) months and the number of hours that lights and other equipment are used changes during each cycle.

    3.    During the week of April 30, 2000 a Confidential Source of Information (SOI), who has proven reliable in the past, related to Hollywood Police Department Detective Hector Meletich that he/she knew that a marijuana grow house was located at 1507 Coolidge Street, Hollywood, Florida.  The SOI told Detective Meletich that during the week of April 23, 2000 he/she was at 1507 Coolidge Street, Hollywood, Florida, and saw marijuana plants growing in a bathroom.

    4.    On May 4, 2000 S/A Kris Hunt served a subpoena to Florida Power and Light requesting power usage records over the last year for 1507 Coolidge Street, Hollywood, Florida, as the indoor cultivation of cannabis requires large amounts of electricity. The power usage for one of the neighboring houses was also obtained in order to compare to the power usage at 1507 Coolidge Street. The average number of kilowatt-hours utilized at 1507 Coolidge from

<div align="center">4</div>

April 1999 through April 2000 was 2973 per month.   The average number of kilowatt hours for the neighboring house was 2083 per month, approximately 900 hours less per month. Also, the power usage for 1507 Coolidge Street, Hollywood, Florida does not appear to follow the natural seasonal usage curve.

5.   On May 4, 2000 at approximately 4:10 AM, I conducted a thermal imaging scan outside of 1507 Coolidge Street, Hollywood, Florida. This device is a passive, non-intrusive system, which detects differences in temperature of an object being observed. This system does not send any beams or rays into an area nor does it enter any structure area.   This system only detects differences in the surface temperatures of an object.   The use of this device in the early morning or late evening hours, without solar loading (sunshine), will highlight man-made heat sources as a white color and cooler temperatures by shades of gray.   Upon inspection of 1507 Coolidge Street, Hollywood, Florida, I noticed a bathroom window covered in plywood. While conducting the scan I noticed that the bathroom window covered in plywood was exhibiting unusual heat patterns. Also, while conducting the scan, I noticed that an awning covering a window adjacent to the bathroom window was exhibiting unusual heat patterns.   On the front of the house another window was covered with an awning and did not exhibit heat.   A vent on the roof of the house was also exhibiting more heat than similar vents on neighboring houses. While conducting the scan Detective Meletich and I could detect

5

the odor of cannabis coming from 1507 Coolidge Street, Hollywood,
Florida.

6.    Based upon your affiant's experience, training and due
to the totality of the facts obtained during the investigation,
there is probable cause to believe that the property located at
1507 Coolidge Street, Hollywood, Florida is being used to
cultivate cannabis in violation of Title 21, United States Code,
Sections 841(a)(1) and 856 and Title 18, United States Code,
Section 2, and that evidence, fruits, and instrumentalities
relating to these violations are located at 1507 Coolidge Street,
Hollywood, Florida.


FURTHER YOUR AFFIANT SAYETH NAUGHT.


                              KRIS HUNT, SPECIAL AGENT
                              U.S. DRUG ENFORCEMENT ADMINISTRATION

Sworn and subscribed to before
me this 10th day of May 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

U.S. Department of Justice
Drug Enforcement Administration

Document 25

Read instructions on Reverse
before completing
REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

P53995
Entered on FLSD Docket 08/15/2000 Page

| 1. HOW OBTAINED (Check) | | | | 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|---|---|---|---|
| ☐ Purchase ☒ Seizure ☐ Free Sample | | | | GS-00-0123 | | NGM3-L |
| ☐ Lab. Seizure ☐ Money Flashed ☐ Compliance Sample (Non-Criminal) | | | | | | |
| ☐ Internal Body Carry ☐ Other (Specify) | | | | | | |

| 4a. WHERE OBTAINED (City, State/Country) | 4b. DATE OBTAINED | 5. FILE TITLE | | |
|---|---|---|---|---|
| Hollywood, FL | 05/10/2000 | | | |
| 6a. REFERRING AGENCY (Name) | 6b. REFERRAL | THOMAS, Mike | | |
| N/A | Case No. OR ☐ Seizure No. No. N/A | 7. DATE PREPARED | 8. GROUP NO. | |

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 4 | | marijuana / hry | 39 root clusters and a quantity of green leafy substance. | | 2.5 /3; | |
| 5 | | marijuana / hscc | a plastic bag containing green leafy substanc. | | 78.4g | |
| 6 | | marijuana / h;e c | plastic container with residue. | | /83.3; | |

16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG ? ☒ NO (included above) ☐ YES (if Yes, enter exhibit no. and describe original container fully)

REMARKS:

On May 10, 2000 members of FLDO TF 1 along with Dets. of the Hollywood P.D. executed a Federal search warrant at 1507 Coolidge Street, Hollywood, FL, the residence of Michael THOMAS. Exhibits 4 was seized and counted by S/A Kris Hunt and Det. Wilbur Fernander from trash in the back yard. Exhibit 5 was seized from a refrigerator in the kitchen. Exhibit 6 was seized from a drawer in the kitchen. S/A Hunt maintained custody until the above exhibits were delivered to the SEL on the date indicated below.

| 17. SUBMITTED BY SPECIAL AGENT (Signature) | 18. APPROVED BY (Signature & Title) |
|---|---|
| S/A Kris J Hunt | G/S Elizabeth W. Kemoshall *Elizabeth Kemoshall* |

LABORATORY EVIDENCE RECEIPT REPORT

| 19. NO. PACKAGES | 20. RECEIVED FROM (Signature & Date) | 21. Print or Type NAME and TITLE |
|---|---|---|
| 1 by 2 hscc. | e/1,/00 | Kris Hunt |
| 22. SEAL | 23. RECEIVED BY (Signature & Date) | 24. Print or Type NAME and TITLE |
| ☐ Broken ☒ Unbroken | Aleree Maupmi 5/11/2000 | Jued Tile h |

LABORATORY REPORT

25. ANALYSIS SUMMARY AND REMARKS

Exhibit 4 contains marijuana.
   Gross Wt: 808.9g    Net Wt: 65.7g
Exhibit 5 contains marijuana.
   Gross Wt: 98.7g    Net Wt: 64.3g
Exhibit 6 contains marijuana.
   Gross Wt: 184.0g    Net Wt: 2.6g

113185
113186
113187

amp 5/31/00

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 4 | 113185 | marijuana | | | | | 65.2g |
| 5 | 113186 | marijuana | | | | | 63.4g |
| 6 | 113187 | marijuana | | | | | 1.8g |

| 34. ANALYST (Signature) | 35. TITLE | 36. DATE COMPLETED |
|---|---|---|
| Allen J. Catterton | Forensic Chemist | 5/30/00 |
| 37. APPROVED BY (Signature & Date) | 38. TITLE | 39. LAB. LOCATION |
| | Laboratory Director | Miami, FL |

DEA Form - 7 (Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

02 C

P52997

U.S. Department of Justice
Drug Enforcement Administration

Document 25 REPORT OF DRUG PROPERTY COLLECTED, PURCHASED OR SEIZED

**1. HOW OBTAINED (Check)**

☐ Purchase  ☒ Seizure  ☐ Free Sample
☐ Lab. Seizure  ☐ Money Flashed  ☐ Compliance Sample (Non-Criminal)
☐ Internal Body Carry  ☐ Other *(Specify)*

| 2a. FILE NO. | 2b. PROGRAM CODE | 3. G-DEP ID |
|---|---|---|
| GS-00-0123 | | NGM3-L |

**4a. WHERE OBTAINED (City, State/Country)**
Hollywood, FL

**4b. DATE OBTAINED**
05/10/2000

**5. FILE TITLE**

**6a. REFERRING AGENCY (Name)**
N/A

**6b. REFERRAL**
☐ Case No. OR ☐ Seizure No.
No.     N/A

THOMAS, Mike

| 7. DATE PREPARED | 8. GROUP NO. |
|---|---|

| 9. Exhibit No. | 10. FDIN (10 characters) | 11. ALLEGED DRUGS | 12. MARKS OR LABELS (Describe fully) | APPROX. GROSS QUANTITY | | 15. Purchase Cost |
|---|---|---|---|---|---|---|
| | | | | 13. Seized | 14. Submitted | |
| 7 | | alprazolam | 4 white tablets | | 3.2 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**16. WAS ORIGINAL CONTAINER SUBMITTED SEPARATE FROM DRUG?**  ☒ NO (included above)  ☐ YES (if Yes, enter exhibit no. and describe original container fully)

**REMARKS:**

On May 10, 2000 members of FLDO TF 1 along with Dets. of the Hollywood P.D. executed a Federal search warrant at 1507 Coolidge Street, Hollywood, FL, the residence of Michael THOMAS. Exhibit 7 was seized from a drawer in the kitchen. S/A Hunt maintained custody until the above exhibits were delivered to the SEL on the date indicated below.

**17. SUBMITTED BY SPECIAL AGENT (Signature)**
S/A Kris J Hunt

**18. APPROVED BY (Signature & Title)**
G/S Elizabeth W. Kempshall  Elizabeth W Kempshall

**LABORATORY EVIDENCE RECEIPT REPORT**

**19. NO. PACKAGES**
1 k.s.c.

**20. RECEIVED FROM (Signature & Date)**
5/11/00

**21. Print or Type NAME and TITLE**
Kris Hunt

**22. SEAL**
☐ Broken  ☒ Unbroken

**23. RECEIVED BY (Signature & Date)**
5/11/2001

**24. Print or Type NAME and TITLE**

**LABORATORY REPORT**

**25. ANALYSIS SUMMARY AND REMARKS**

Exhibit 7 contains aprazolam.
Gross Wt: 36.7g     Net Wt: 1.1g (4 tabs)

113188

amp 5/31/00

| 26. Exhibit No. | 27. Lab. No. | 28. ACTIVE DRUG INGREDIENT (Established or Common Name) | CONCENTRATION | | | 32. AMT. OF PURE DRUG | 33. RESERVE |
|---|---|---|---|---|---|---|---|
| | | | 29. Strength | 30. Measure | 31. Unit | | |
| 7 | 113188 | alprazolam | | | | | 0.79g 3 tabs |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**34. ANALYST (Signature)**
Allen J. Catterton

**35. TITLE**
Forensic Chemist

**36. DATE COMPLETED**
5/30/00

**37. APPROVED BY (Signature & Date)**

**38. TITLE**
Laboratory Director

**39. LAB LOCATION**
Miami, FL

**DEA Form - 7** (Sept. 1995)

Previous edition dated 4/90 may be used until stock is exhausted.

03